UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    CARRICK TRUCKING, INC.,          Case No. 13-20904-dob
                                                      Chapter 11 Proceeding
          Debtor.                                 Hon. Daniel S. Opperman
_____/

KELLY M. HAGEN, Liquidating Trustee,

    Plaintiff and Counter-Defendant,

v.                                                                Adversary Proceeding
                                                                  Case No. 14-2109-dob

BRIAN CARRICK,

    Defendant and Counter-Plaintiff.
_____/

## TRIAL OPINION

        The matters before the Court are four Adversary Proceedings brought by the Liquidating Trustee, Kelly M. Hagen ("Liquidating Trustee") against four individuals, who are all shareholders or former shareholders of the Debtor, Carrick Trucking, Inc. ("Debtor"), which at the relevant times, was a family-owned and operated business. With the exception of the caption, this Opinion is identical in substance and is entered in all four Adversary Proceedings because all of the Adversary Proceedings were combined for trial. The four individual Defendants are: Gail Carrick, Dean Carrick, Brian Carrick and Mark Carrick. The Liquidating Trustee seeks a determination that as of the bankruptcy petition date, five items of equipment were owned by Debtor and are, thus, property of the bankruptcy estate, or that the proceeds from the post-petition sale of this equipment are property of the bankruptcy estate. The Liquidating Trustee also seeks to avoid transfers made by

1

Debtor to Defendants as insiders, asserting such to be preferential transfers pursuant to 11 U.S.C. § 547(b). Finally, the Liquidating Trustee seeks to avoid Debtor's transfer of two items of equipment as fraudulent transfers pursuant to 11 U.S.C. § 548 and M.C.L.A. § 566.35. The trials in these adversary proceedings were consolidated by agreement of the parties.[1] The trials took place on September 21, 2015, and continued to September 24, 2015, and October 26, 2015, and concluded with closing arguments on October 30, 2015, after which the Court took these matters under advisement.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences); and 28 U.S.C. § 157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances). The United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy judges to adjudicate certain claims, such as the instant matters before the Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

## Background Facts

---

[1] Adversary Proceeding No. 14-2108 was originally included as part of the consolidated proceedings. On August 7, 2015, this Court issued an oral bench ruling in that proceeding, which was later memorialized in an Order Granting Liquidating Trustee's Motion for Partial Summary Judgment, entered on August 18, 2015. Defendants in that proceeding, Brian and Trudy Carrick, thereafter timely appealed that Order, which appeal is currently pending before the District Court as Civil Case Number 15-cv-13115, the Honorable Thomas L. Ludington presiding.

The Debtor owned and operated a sand, gravel and stone excavating and trucking business for over twenty years prior to filing for Chapter 11 bankruptcy on April 1, 2013. The Debtor was and is family owned and operated, and the above-named individual Defendants worked together, each having their own, unique roles in running of the business in the areas of purchasing, finances and general operations. Gail Carrick had a background in the banking industry, understood the financial end of the business, and handled the companies financial accounting and loans almost exclusively, if not exclusively. Brian, Mark, and Dean Carrick were all involved in the various stages of excavating and transporting sand, gravel, and stone.

Debtor's Joint Combined Chapter 11 Plan of Liquidation and Disclosure Statement was confirmed on May 2, 2014. The Confirmed Plan was a liquidating plan, and created a Liquidating Trust, with the appointment of the Liquidating Trustee. The Liquidating Trustee investigated the records of Debtor, and determined that certain assets were the property of the Debtor on the petition date, and filed adversary proceedings for turnover. Each Defendant disputes this allegation, asserting that these items were leased by these individuals to Debtor. The items, individuals with disputed ownership claims, and respective adversary proceeding numbers are described as follows:

| Item: | Ownership Disputed By: | Adv. Proc. No.: |
| --- | --- | --- |
| 1992/1993 CAT D400 Dump Truck | Brian Carrick | 14-2109 |
| 1993 CAT D400 Dump Truck | Brian Carrick | 14-2109 |
| 1999 KOMATSU Loader | Brian, Mark and Gail Carrick | 14-2110 |
| 1994 CAT D400 Dump Truck | Dean Carrick | 14-2111 |
| 1990 CAT 980C Loader | Mark Carrick | 14-2112 |

3

The 1992/1993 and 1993 Cat D400 Dump Trucks were sold during the pendency of this Chapter 11 case (Adv. Proc. No. 14-2109) for a total of $50,400.00, which is being held in escrow pending resolution of the disputed ownership. The 1999 Komatsu 250 Loader (Adv. Proc. No. 14-2110) is still in the possession of Debtor, or Brian Carrick and/or Mark Carrick. The 1994 CAT D400 Dump Truck was sold during the pendency of the Chapter 11 case (Adv. Proc. No. 14-2111), with $27,000.00 being held in escrow. Finally, 1990 CAT 980C Loader (Adv. Pro. No. 14-2112) was also sold during the pendency of the bankruptcy case, netting $33,300.00 in sale proceeds, which is similarly held in escrow.

The Liquidating Trustee and Defendants stipulate that the Debtor made the payments on all of the above items of property to the respective secured creditors and that the Debtor had possession of all items on the bankruptcy petition date, and utilized all in its business operations. The parties stipulate that Debtor scheduled these items as an asset of the Debtor on Debtor's books and records, and Debtor claimed yearly depreciation since 2007 for all of these items, as well as deducting the financing expenses associated with these items, on its federal tax returns. Another fact stipulated to was that Defendants did not claim or report any rental/lease income for these items, nor was a depreciation expense on their federal tax returns claimed at any time for these items, or at a minimum, after 2006 as concerning the 1999 Loader.

Defendants contend that a lease existed between them and Debtor and that Defendants leased these items to the Debtor. Defendants concede that while these items were used by Debtor, they were used by Debtor as a lessee, not owner.

Additionally, the Liquidating Trustee seeks to avoid certain transfers as preferential or fraudulent in Adversary Proceeding No. 14-2111, which are described as follows:

| Item: | Description and Basis: |
|---|---|
| $95,874.97[2] | Alleged avoidable preferential payments pursuant to 11 U.S.C. § 547(b). Alleged to represent total funds received by Defendants Gail and/or Dean Carrick, as insiders, in the year prior to the bankruptcy filing; asserted to represent repayment on loans owing to Defendants by Debtor ($69,142.53), or reimbursement payments from Debtor to Defendants ($26,732.44). |
| 1996 JCB Backhoe | Alleged avoidable fraudulent transfer to Gail and/or Dean Carrick pursuant to 11 U.S.C. § 548 and M.C.L.A. § 566.35. Alleged that Debtor did not receive reasonably equivalent value in exchange for the May 1, 2012, transfer of this asset to Defendants. |
| 1998 Benson Super Gravel Train and Scale | Alleged avoidable fraudulent transfer to Gail and/or Dean Carrick pursuant to 11 U.S.C. § 548 and M.C.L.A. § 566.35. Alleged that Debtor did not receive reasonably equivalent value in exchange for the October, 2012, transfers of these assets to Defendants. |

Defendants Gail and Dean Carrick take the position that the Liquidating Trustee is not entitled to avoid the $95,874.97 in alleged preferential transfers because Debtor was not insolvent during the one-year period prior to Debtor's bankruptcy filing and, thus, has not established prima facie avoidable preferential transfers under 11 U.S.C. § 547(b)(4). Alternatively, Defendants assert they have a valid defense under Section 547(c)(1) and (2) to these being preferential transfers. As to the asserted fraudulent transfers from Debtor to Gail and/or Dean Carrick of the JCB Backhoe and Gravel Train and Scale, Defendants assert that

---

[2] Although $5,310.78 in payments is alleged as preferential payments made by Debtor to Defendant Dean Carrick pursuant to a forestry lease (Count II of the Liquidating Trustee's Complaint), such appears to have been withdrawn or abandoned, because this amount is not included in the Joint Final Pretrial Order.

reasonably equivalent value was received by Debtor for the transfers of such because the transfers of such was for repayment of a loan Debtor owed to Dean and/or Gail Carrick.

## Discussion

### Property of the Estate

Under § 541(a)(1), property of the estate includes "all or legal or equitable interests of the debtor in property as of the commencement of the case." "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent . . . ." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). Even a bare possessory interest such, as a tenancy at sufferance, is "an interest in real property within the scope of the estate in bankruptcy under section 541." *Convenient Food Mart No. 144, Inc. v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.)*, 968 F.2d 592, 594 (6th Cir. 1992) (citations omitted).

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

*Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 700 (6th Cir. 1999) ("[I]t is well settled that a debtor's property rights are created and defined by state law.") (citations omitted).

The Michigan Supreme Court in the case of *Twichel v. MIC General Ins. Corp.* 469 Mich. 524, 676 N.W.2d 616 (2004), examined the issue of the meaning of "owner" for purposes of the receipt of personal protection insurance benefits under M.C.L.A. § 500.3113(b), as well as M.C.L.A. § 257.401, for purposes of owner liability under the Michigan Vehicle Code. The *Twichel* Court quoted the language of both statutes defining "owner," as:

> (i) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

M.C.L.A. § 500.31101(2)(g)(i) ("owner" for personal protection insurance benefits).

> Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is longer than 30 days.

M.C.L.A. § 257.37(a) ("owner" for liability purposes under the Michigan Vehicle Code).

The *Twichel* Court held that the purpose behind the statutes was immaterial when the language was virtually identical. *Twichel*, 469 Mich. at 531.

## 11 U.S.C. § 547

The Liquidating Trustee argues that the $95,874.97 in payments from Debtor to Gail and/or Dean Carrick are avoidable pursuant to Section 11 U.S.C. § 547(b), which states:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
>     (1) to or for the benefit of a creditor;
>
>     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>     (3) made while the debtor was insolvent;
>
>     (4) made--
>
>         (A) on or within 90 days before the date of the filing of the petition; or
>         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an

insider; and

    (5) that enables such creditor to receive more than such creditor would receive if--

        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Determinations as to corporate insolvency start with the definition of "insolvent" found at 11 U.S.C. § 101(32)(A), which states:

(32) The term "insolvent" means–

    (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of–

        (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

        (ii) property that may be exempted from property of the estate under section 522 of this title;

While a presumption of insolvency in the trustee's favor exists if the transfer at issue occurs within 90 days of the bankruptcy filing under Section 547(f), there is no presumption if the transfer occurs more that 90 days prior. Thus, it is the trustee's burden of proof by a preponderance of the evidence to establish insolvency in the absence of a presumption. The burden is upon the trustee to prove that based upon a "fair valuation" of a debtor's property, as compared with debts. This requires evidence of the actual value of assets owned by the debtor, documentary appraisals, etc., or opinion testimony. *See Orix Credit Alliance, Inc. v. Harvey (In re Lamar Haddox Contractor, Inc.)*, 40 F.3d 118, 121 (5th Cir. 1994) (citations omitted).

Section 547(c) of the Bankruptcy Code contains a number of exceptions to the avoidability of a preferential transfer under Section 547(b). Section 547(g) of the Bankruptcy Code makes it clear

8

that a party seeking to avoid a preferential transfer under Section 547(b) has the burden of proving the avoidability of the transfer, but that a party seeking to invoke an exception under § 547(c) to the avoidability of a preferential transfer has the burden of proof with respect to such exception. *In re Am. Camshaft Specialties, Inc.*, 444 B.R. 347, 352 (Bankr. E.D. Mich. 2011).

Defendants Gail and Dean Carrick argue that these payments were contemporaneous exchanges for new value pursuant to Section 547(c)(1) and\or were made in the ordinary course of business or financial affairs of the debtor and that, pursuant to Section 547(c)(2)(A), the Plaintiff may not avoid those transfers.

Section 547(c)(1) states:

> (c) The trustee may not avoid under this section a transfer—
>
>> (1) to the extent that such transfer was–
>>
>>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>>
>>> (B) in fact a substantially contemporaneous exchange;

Section 547(c)(2) provides as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> \*\*\*
>
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>>
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>>
>>> (B) made according to ordinary business terms[.]

The Bankruptcy Code does not define the phrase "ordinary course of business." The legislative history discussing § 547(c)(2) of the Bankruptcy Code simply states that the "purpose of

this exception is to leave undisturbed normal financial relations, because [permitting the continuation of normal relations] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S. Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5874. The subjective component of Section 547(c)(2)(A) requires a fact specific analysis of the relationship between the debtor and the transferee of a payment that is otherwise avoidable under § 547(b). *Id*. at 354. "The case law that has developed under § 547(c)(2) makes clear that one of the most relevant facts to consider is whether there were any changes in the timing of payments that are sought to be avoided under § 547(b) from other payments made by the debtor to the transferee." *Id*. Other factors courts should examine in considering whether transactions are ordinary include: the amount and manner a transaction was paid, the circumstances under which the transfer was made, *see Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42 (6th Cir. 1989), and whether there was unusual collection activity during the preference period, *see Thompson Boat Co. v. Volvo Penta of the Americas, Inc. (In re Thompson Boat Co.)*, 173 F.3d 430 (6th Cir. 1999) (unpublished). The Court must therefore analyze the particular business relationship and course of conduct of the parties to determine whether the preference period payments were "ordinary."

<u>11 U.S.C. § 548</u>

Section 548 of the Bankruptcy Code provides:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation as incurred, or became insolvent as a result of such transfer or obligation . . . .

To prevail under § 548(a)(1)(B), the Trustee must show that:

> (1) a transfer was made, (2) the transferred property belonged to the debtor, (3) the transfer was made within one year prior to the filing of the petition, (4) the transfer was made for less than equivalent value, and (5) at a time the debtor was insolvent or was made insolvent by the transfer.

*Martino v. Edison Worldwide Capital* (*In re Randy*), 189 B.R. 425 (Bankr. N.D. Ill. 1995).

A transfer will not be avoided under Section 548(a)(1)(B) if the debtor received "reasonably equivalent value" in exchange for the transfer of property. The party seeking turnover bears the burden of proof by a preponderance of the evidence that the transfer is avoidable under Section 548. *In re St. Clair Clinic, Inc.,* 73 F.3d 362 (6th Cir. 1996); *In re R.D.F. Dev., Inc.*, 239 B.R. 336, 342 (6th Cir. B.A.P. 1999). The term "reasonably equivalent value" is not defined by the Bankruptcy Code and depends on all of the circumstances surrounding the transaction.

> First, the Court must ascertain whether the Debtor received any value for the transfer. If so, then a comparison must be made of the worth of the value received by the debtor to the property which was transferred in exchange. It is well understood that neither an executory promise or anything else is value unless it provides an **economic benefit to the debtor**.

*Baumgart v. Bedly, Inc. (In re Empire Interiors, Inc.)*, 248 B.R. 305, 307-08 (Bankr. N.D. Ohio, 2000)(emphasis added). In considering the value of the exchange, "[t]he degree to which the debtor's net worth is preserved is a primary consideration. If the debtor's net worth is maintained, its creditors cannot complain of the transfer." *Enwotwen Industries, Inc. v. Brookstone Ltd. (In re Newtowne, Inc.)*, 157 B.R. 374, 379 (Bankr. S.D. Ohio, 1993)(*citations omitted*).

While an economic benefit must inure to the debtor, s*ee Lim v. Greenfield (In re Greenfield)*, 273 B.R. 128 (E.D. Mich. 2002)(wife's waiver of dower rights held not reasonably equivalent value

11

for the transfer of property by debtor to spouse; equivalence does not turn on what a transferee gives up in exchange for the transfer, but on what debtor receives), the benefit need not be immediate or certain. *See Frank v. Kiesel (In re Denison)*, 292 B.R. 150 (E.D. Mich. 2003)(debtor's down payment on mobile home in exchange for promise to transfer title after remaining monthly payments are satisfied held reasonably equivalent); *In re Chomakos*, 69 F.3d 769, 771 (6th Cir. 1995) (trustee sought to recover debtor's pre-petition gambling losses from Las Vegas casino; Debtor's wagers in exchange for opportunity to win more than the sum bet, along with the entertainment value provided by casino held to be reasonably equivalent).

"Both direct and indirect benefits should be considered by the court in determining whether reasonably equivalent value has been received." *Harker v. Center Motors, Inc. (In re Gerdes)*, 246 B.R. 311, 313 (Bankr. S.D. Ohio, 2000) (*citing Enwotwen*, 157 B.R. at 378-79). Indirect benefits to a debtor often arise in the context of debtor payments or transfers made on behalf of third parties. As a general rule, payments or transfers made by a debtor on behalf of a third party are avoidable because the debtor receives little or no value in return. *See, e.g.*, *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 578 (7th Cir. 1997) (no reasonably equivalent value given to a debtor corporation who guaranteed the debts of an affiliate corporation); *C-T of Virginia, Inc. v. PaineWebber Inc. (In re C-T of Virginia, Inc.)* 124 B.R. 700, 702 (W.D. Va. 1990) (bankruptcy trustee may avoid transfers made by bankrupt to pay valid debts of corporate affiliate); *Hall v. Arthur Young & Co. (In re Computer Universe, Inc.)*, 58 B.R. 28, 30 (Bankr. M.D. Fla. 1986)(recognizing that the payment of a shareholder debt by a corporation, or visa-versa, is generally avoidable by the trustee).

Notwithstanding this general rule, Courts have been willing to consider indirect benefits received by a debtor if the benefits are "fairly concrete." *Leibowitz v. Parkway Bank & Trust Co.*

*(In re Image Worldwide, Ltd.)*, 139 F.3d at 578 (concrete indirect benefits include goodwill and "increased ability to borrow working capital"); *In re Computer Universe*, 58 B.R. at 31 (debtor received use of the goods or services for which debtor paid); *Uiterwyk Corp. v. Maher Terminals (In re Uiterwyk Corp.)*, 75 B.R. 33, 34 (Bankr. M.D. Fla. 1987)(debtor's payment of a third party's debt resulted in a debt of the debtor to that third party being discharged); *Harker v. Center Motors, Inc. (In re Gerdes)*, 246 B.R. 311, 314 (Bankr. S.D. Ohio, 2000)(avoidance of potential personal legal liability held significant indirect benefit of reasonably equivalent value).

Indirect, non-economic benefits such as release of a possible burden on the marital relationship, preservation of a family relationship, or intangible psychological benefits do not constitute reasonably equivalent value. *See Dietz v. St. Edward's Catholic Church (In re Bargfrede* (debtor's transfer of assets to satisfy judgment against spouse provided only non-economic benefits to debtor and did not constitute reasonably equivalent value); *In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983)(love and affection not reasonably equivalent value).

In order to prevail under a Section 548 fraudulent transfer theory, the Trustee must also show that under § 548(a)(1)(B)(ii)(I), Debtor was either insolvent at the time of transfer, or was rendered insolvent as a result of the transactions. "The Bankruptcy Code's definition of insolvency is essentially a balance sheet test in which the sum of the debts is greater than the sum of the assets, at a fair valuation, exclusive of property transferred with actual fraudulent intent, and property that may be exempted from the bankruptcy estate." 5 *Collier on Bankruptcy*, ¶ 548.05 [1][a] at 548-32-33 (Alan N. Resnick, *et. al*, eds., 15th Ed. 2005).

## Fraudulent Transfer or Obligation Under Michigan Law

M.C.L.A. § 566.35 provides a similar remedy under Michigan law for fraudulent transfers.

This statute provides:

> 566.35. Fraudulent transfer or obligation; claim of creditor arising prior to transfer or obligation
>
> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe the debtor was insolvent.

An "insider" for purposes of the Michigan statute would include a director, officer, person in control of a corporate debtor. M.C.L.A. § 566.31(g)(ii). Michigan law generally follows the federal law in terms of determining insolvency, and additionally provides that a "debtor who is generally not paying his or her debtors as they become due is presumed to be insolvent." M.C.L.A. § 566.32(2). Under M.C.L.A. § 600.5813, the statute of limitations for fraudulent transfers under Michigan law is six years, and for insiders is one year. This is calculated after the transfer was made or obligation incurred, or within 2 years after discovery if the transfer is concealed pursuant to M.C.L.A. § 600.5855.

<u>Analysis</u>

Defendants have produced written leases regarding the five pieces of equipment at issue, admitted as Defendants' Exhibit A. The Court has reviewed the five leases at issue, ranging in date from April 10, 2002, to February 2, 2005. Each is titled "Automobile Lease Agreement," and lists Brian, Dean or Mark Carrick as the owner/lessor of the individual piece of equipment, and Carrick Trucking, Inc., as the lessee. All leases are for the sum of "one dollar," and require

14

the lessee, Carrick Trucking, Inc., to obtain and pay insurance and otherwise "satisfy the condition of said lease." The Affidavit of Charles S. Elliott, who was the account manager with Diebold Insurance Agency handling the insurance account of Carrick Trucking, Inc., was admitted as the Liquidating Trustee's Exhibit 33. Charles Elliott's Affidavit states that none of these leases were contained in its company file of Carrick Trucking, Inc., and it would have been in the normal business practice of the Agency to contain such leases if such were provided to the Agency.

The Court also notes Defendants' stipulation to the following and adopts such as findings of fact:

(1) Debtor made the payments on all of the five pieces of equipment to the respective secured creditors;

(2) Debtor had possession of all five pieces of equipment on the bankruptcy petition date, and utilized all in its business operations;

(3) Debtor scheduled all five pieces of equipment as assets of the Debtor on Debtor's books and records;

(4) Debtor claimed yearly depreciation since 2007 for all five pieces of equipment;

(5) Debtor deducted the financing expenses associated with all five pieces of equipment on its federal tax returns;

(6) Defendants did not claim or report any rental/lease income for these items, nor was a depreciation expense on their federal tax returns claimed at any time for these items, or at a minimum, after 2006 as concerning the 1999 Loader.

The only evidence offered by the Defendants as to the equipment at issue are the leases admitted at Exhibit A, and their testimony at the trial. Defendants also stipulated to crucial

indicia of ownership, not by Defendants, but ownership by Debtor, Carrick Trucking, Inc. Debtor, not only possessed the equipment, it made the payments to secured creditors for all of the equipment and deducted the financing expenses on its tax returns. Debtor scheduled this equipment on its books and records and claimed depreciation on its tax returns for such. In contrast, Defendants did not claim any rent or lease income or any depreciation for this equipment on their individual tax returns. The finding this Court must make is that the purported owner have the "exclusive use" of the property, "under a lease or otherwise, for a period that is longer than 30 days." These findings, which are not contested, go well above the minimal threshold standard for a finding that Debtor owned all five pieces of this equipment, well before and certainly at the time of the bankruptcy filing. If Debtor owned such, they are property of the bankruptcy estate, and either the items themselves, or proceeds from such, must be turned over to the Liquidating Trustee.

The Court notes there may be some question as to how the proceeds of the 1999 Komatsu should be divided, as raised at closing arguments on October 30, 2015. On this point, the Court instructs the parties propose and present a joint discovery and/or briefing schedule as to this determination, or to stipulate to such division of proceeds.

The Court finds that the Liquidating Trustee has not stated a prima facie preference action for the $95,874.97 in payments received by Gail and/or Dean Carrick, as admitted insiders of the Debtor for the contested period during the one-year prior to the Debtor's April 1, 2013, Chapter 11 filing. The reason for this is because the Liquidating Trustee did not prove at trial by a preponderance of the evidence that the Debtor was insolvent during this time. The Liquidating Trustee's admitted only evidence as to insolvency is the testimony of Debtor's accountant, Michael Cool, who testified that overall, an examination of Debtor's books and records indicated that Debtor

was struggling financially during the relevant time, and could be considered insolvent in the year prior to the bankruptcy filing. Mr. Cool offered no testimony as to the fair valuation of Debtor's assets as compared with its debts as is required for a Section 547(b) finding of insolvency under the definition of insolvency found in Section 101(32)(A).

The Court's finding that the Liquidating Trustee failed to prove insolvency under Section 547(b), also defeats her fraudulent transfer claims concerning the Backhoe, Scale and Gravel Train pursuant to 11 U.S.C. § 548 and M.C.L.A. § 566.35. Like the $95,874.97 in payments above, the transfers of the Backhoe, Scale and Gravel Train occurred within the year prior to the bankruptcy filing. Even if the Liquidating Trustee had established Debtor's insolvency at the time of the transfers, Defendant Gail Carrick testified at the September 24, 2015, hearing that the Backhoe, Gravel Train and Scale were purchased based upon a draw owing to her and Defendant Dean Carrick, which more than paid for the value of these items. The Liquidating Trustee did not offer evidence to refute this testimony. Thus, the Liquidating Trustee has not proven that reasonably equivalent value was not received for these three items transferred within the year prior to the bankruptcy filing.

Conclusion

The Court grants judgment in favor of the Liquidating Trustee in all four A.P. Nos. 14-2109 (against Brian Carrick), 14-2010 (against Brian Carrick, Gail Carrick and Dean Carrick), 14-2111 (against Gail and Dean Carrick), and 14-2112 (against Mark Carrick), as to turnover of the following property or the proceeds from the sale of such property: 1992/93 CAT D400 Dump Truck; 1993 CAT D400 Dump Truck; 1999 Komatsu Loader; 1994 CAT D400 Dump Truck; and 1991 CAT 980C Loader.

The Court grants judgment in favor of the Defendants Gail Carrick and Dean Carrick and

against the Liquidating Trustee in A.P. No. 14-2111 as to $95,874.97 in payments alleged to be avoidable by the Liquidating Trustee pursuant to 11 U.S.C. § 547(b).

The Court grants judgment in favor of the Defendants Gail and Dean Carrick and against Liquidating Trustee in A.P. No. 14-2111 as to the avoidance of the transfer of the Backhoe, Scale and Gravel Train, as fraudulent transfers pursuant to 11 U.S.C. § 548 and/or M.C.L.A. 566.35.

Counsel for the Liquidating Trustee is directed to prepare an Order consistent with this Opinion.

**Signed on March 24, 2016**

                                            **/s/ Daniel S. Opperman**
                                            **Daniel S. Opperman**
                                            **United States Bankruptcy Judge**